1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney

2  BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  ROBERT DAVID REES (CABN 229441)
   ANDREW S. HUANG (CABN 193730)
5  Assistant United States Attorney

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-7200
       FAX: (415) 436-7234
8      andrew.huang@usdoj.gov

9  Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 12-0678 MMC |
| Plaintiff, | **UNITED STATES' NOTICE OF MOTION AND MOTION TO TAKE DEPOSITION OF THOMAS UEHLI PURSUANT TO RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE** |
| v. | |
| JAMES B. CATLEDGE, | |
| Defendant. | Motion Hearing Date: September 21, 2016 |
| | Motion Hearing Time: 2:15 p.m. |
| | Hon. Maxine M. Chesney |
| | Courtroom 7, 19th Floor |

TO: THIS HONORABLE COURT, DEFENDANT JAMES B. CATLEDGE, AND COUNSEL OF RECORD FOR DEFENDANT CATLEDGE

PLEASE TAKE NOTICE that on September 21, 2016, at 2:15 p.m., or as soon thereafter as the matter may be heard, the United States of America, by and through undersigned counsel, will move the Court for an order pursuant to Rule 15 of the Federal Rules of Criminal Procedure to permit the United States to take the deposition of Thomas Uehli, a Swiss National who normally resides in Switzerland, during the week of October 10, 2016. The proposed deposition would occur in San Francisco,

California, at the Federal Building, 450 Golden Gate Ave. Such deposition is necessary because Uehli resides beyond the Court's subpoena power and has indicated his unwillingness to travel to the United States for trial. He is, however, willing to travel to the San Francisco area during the second week of October 2016 and submit to a deposition.

This motion is based upon Federal Rule of Criminal Procedure 15, this notice and motion, the law and facts proffered herein, the Declarations of Andrew S. Huang and Collette L. Ford, and any evidence and arguments presented by counsel at the hearing on this motion.

## I. BACKGROUND

On September 18, 2012, a federal grand jury returned a four-count indictment charging defendants James B. Catledge and Derek F.C. Elliott with conspiracy to commit mail fraud and substantive mail fraud charges. Elliott was an owner and operator of a constellation of resort businesses in the Dominican Republic while Catledge owned and operated multiple multi-level marketing businesses. Together, they partnered to gross approximately $91.3 million from investors for a specific resort project known as the Sun Village Juan Dolio. *See* Indictment (Dkt. No. 1). Elliott pleaded guilty to Count One of the Indictment, which charged him with conspiracy, on August 27, 2014.

The proposed deponent is a former employee of defendant Elliott, Thomas Uehli, a Swiss national who resides in Switzerland. In 2014, counsel for defendant Catledge identified Uehli as a material witness to their defense. The government presently has no evidence to contradict this characterization and the parties have repeatedly agreed, on the record, that Uehli is a material witness in this case. *See, e.g.,* Findings of Fact, Conclusion of Law, and Order of August 9, 2016, at 4 (Dkt. No. 164).

To assist the defense, the government undertook efforts to secure Uehli's deposition testimony under the Swiss-American Treaty on Mutual Assistance in Criminal Matters ("MLAT"). The taking of Uehli's deposition, however, has served as a significant obstacle to trial. Both the May 2, 2016, and the October 24, 2016, trial dates were continued, in large part, due to the "delay in the parties taking the foreign deposition of Thomas Uehli." *See* Dkt. Nos. 151 at 4, and 164 at 4. The last continuance resulted in the present trial date of January 16, 2018.

Pursuant to the government's MLAT request, Swiss authorities interviewed Uehli on January 5, 2016. During this interview, Uehli related, among other things, that he began working in 2002 for Elliott's vacation resort business in the Dominican Republic as part of the sales support and accounting team for the sales unit. He eventually moved to Elliott's finance and accounting team, where he worked until he resigned in 2009. As a result, he knew Catledge and Elliott through their business dealings. Although he was not involved in marketing, he claimed to have had access to the finances and witnessed the flow of money relating to areas such as commissions and construction. He asserted that Elliott mismanaged the business and that that is the reason why he offered to assist Catledge with the legal process. During the January 5, 2016, interview, he reiterated his reluctance to come to the United States and testify in court. *See* Declaration of Andrew S. Huang ("Huang Decl.") at ¶ 2.

Subsequent to obtaining the results of Uehli's interview, the government propounded a second MLAT request to take deposition testimony, presumably in Switzerland. After several months of repeated efforts to obtain a response from Swiss authorities on the progress of the request, a Swiss official, Peter Huenig, on August 16 and 31, 2016, indicated that Uehli could be willing to travel to the United States voluntarily and submit to a deposition. Huenig indicated that Uehli would travel to the United States during the first or second week of October and testify at a deposition if the government paid for his travel, he received written confirmation that he is not the target of an on-going investigation in this case, and if he was guaranteed "safe passage" (which the government interprets to be an assurance that he will not be arrested during the trip). Government reimbursement for travel expenses of a Rule 15 deponent would be standard practice in a case such as this one. The prosecutors in this case are prepared to seek approval to meet Uehli's other two conditions in order to facilitate the deposition. *See* Declaration of Collette Ford ¶¶ 3-6.

## II. RULE 15 LEGAL STANDARD

Rule 15(a) of the Federal Rules of Criminal Procedure provides:

> A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data.

A district court has broad discretion to grant a Rule 15 motion to take depositions. *See United States v. Olafson*, 213 F.3d 435, 442 (9th Cir.), *cert. denied*, 531 U.S. 914 (2000); *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998). Such depositions may be ordered where, as here, exceptional circumstances exist. *See United States v. Zuno-Arce*, 44 F.3d 1420, 1424 (9th Cir. 1995) (holding depositions in criminal cases "may be taken only in 'exceptional circumstances'"); *see also United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993); *United States v. Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994).

Although district courts should consider the particular circumstances of each case to determine whether the exceptional circumstances requirement has been satisfied, courts generally have held that four factors should be balanced: whether (1) the witness is unavailable; (2) the testimony is material; (3) injustice would result from the absence of the material testimony to be provided; and (4) countervailing factors would make the deposition unfair to the opposing party. *See Kelley*, 36 F.3d at 1125; *Omene*, 143 F.3d at 1170; *United States v. Thomas*, 62 F.3d 1332, 1340-41 (11th Cir. 1995), *cert. denied*, 516 U.S. 1166 (1996).

When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony by deposing the witness absent significant countervailing factors which would render the taking of the deposition unjust. *See Drogoul*, 1 F.3d at 1552; *see also United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir. 1987), *cert. denied*, 485 U.S. 935 (1988). Here, defendant Catledge, on several occasions through counsel, has indicated a need and desire to secure Uehli's testimony through a Rule 15 deposition. *See, e.g.,* Stipulations to Continue Trial (Dkt. Nos. 151 and 164). Preservation of his testimony for potential use at trial through a Rule 15 deposition seems to be the logical and reasonable next step.

### III. ANALYSIS

A. <u>Witness Unavailability for Trial</u>

Courts have considered the potential availability of the proposed deponent in assessing whether exceptional circumstances and the interest of justice mandate granting a motion to depose under Rule 15(a). *See United States v. Sines*, 761 F.2d 1423, 1439 (9th Cir. 1985). "Rule 15 does not require any **conclusive** showing of 'unavailability' . . . before a deposition can be taken in a criminal case." *Omene*,

143 F.3d at 1169 (emphasis added). "A potential witness is unavailable for purposes of Rule 15(a), however, whenever a substantial likelihood exists that the proposed deponent will not testify at trial." *Drogoul*, 1 F.3d at 1553 (applying *Sines*). "It would be unreasonable and undesirable to require the government to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition." *Sines*, 761 F.3d at 1439; *accord Drogoul*, 1 F.3d at 1553.

Here, a substantial likelihood exists that the proposed deponent would be unavailable for trial. As a Swiss national who resides in Switzerland, Uehli lies outside the subpoena power of this Court. In fact, Swiss law makes it a criminal violation for a Swiss national "carr[y] out activities on behalf of a foreign state on Swiss territory without lawful authority, where such activities are the responsibility of a public authority or public official." *See* Huang Decl. at ¶ 3 and Attachment A (Swiss Criminal Code Art. 271). As a result, the government cannot communicate with Uehli outside of official channels. However, through assertions by defense counsel and through official Swiss-American communication channels, Uehli has repeatedly asserted his unwillingness and/or reluctance to testify at trial in this case. For example, as noted above, Uehli had reiterated his reluctance to travel to the United States during his MLAT interview on January 5, 2016. Only recently, through communications with a Swiss official, Peter Huenig, on August 16 and 31, 2016, has any indication been given that Uehli would be willing to travel to the United States voluntarily and submit to a deposition.

Extraordinary circumstances, therefore, truly exist with respect to Uehli's availability. There has never been any indication that Uehli will make himself available for trial. Furthermore, the government's prolonged efforts through the official MLAT process to take Uehli's deposition in Switzerland have resulted in the present situation and the need to take the deposition the second week of October. There is no guarantee that the Swiss will make any further arrangements pursuant to the government's MLAT request. In fact, it is entirely possible that the Swiss will have considered their duties under the MLAT satisfied by making Uehli available for the proposed deposition in the United States in October 2016.

B. <u>Materiality of Potential Witness Testimony</u>

Similar to witness availability, no "conclusive showing of . . . 'material testimony'" is required before a Rule 15 deposition may be ordered. *See Omene*, 143 F.3d at 1170. As noted above, both parties agree that Uehli's testimony is material. The defense has identified him as a favorable witness for their defense; the government presently has no basis to dispute this assertion. Uehli appears to have worked for defendant Elliott's business as part of the accounting and finance team and claims to have witnessed the Elliott-Catledge partnership, mismanagement of the business, and how investor funds were used. Consequently, he is a percipient witness to material issues at the heart of this case. *See Drogoul*, 1 F.3d at 1556 (finding depositions warranted where expected testimony "goes to the heart of the issues in this case").

C. <u>Injustice from Absence of Uehli's Testimony</u>

The government's interest in deposing Uehli is premised largely on the possibility that Uehli would testify favorably for defendant Catledge. This motion is, therefore, largely intended to prevent or mitigate any injustice to Catledge. Uehli was first identified by the defense as a potential witness whose testimony would be favorable to Catledge's defense. The government recognizes that Uehli has made positive statements regarding Catledge and has indicated his willingness to assist Catledge's defense. Consequently, the government is not in a position, at present, to object to Catledge's assertion that Uehli is a material witness whose testimony must be placed in front of the jury to ensure that Cateledge's trial is free from any potential constitutional error. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

D. <u>Countervailing Factors</u>

The government conferred with counsel for defendant Catledge this week about taking Uehli's deposition during the second week of October. Defense counsel indicated that they will object to this Motion, citing the need for additional time to prepare for such a deposition. On August 9, 2016, the Court continued the trial date in this case from October 24, 2016, to January 16, 2018. The proposed deposition would therefore take place less than two weeks before the recently vacated trial date.

Furthermore, more than a month remains before the proposed deposition. The government recognizes the inconvenience of scheduling changes; however, given the substantial likelihood of Uehli's unavailability at trial, the significant trial delays already attributable to waiting for Uehli's deposition, the significant trial delays that could result from continuing to pursue taking Uehli's deposition in Switzerland if his deposition is not taken in the United States next month,[1] the fact that Uehli was identified by the defense as a favorable defense witness, and the possibility that Swiss authorities may cease to further assist the government in obtaining Uehli's testimony, the government is unaware of any countervailing factors that outweigh the immediate need to take Uehli's testimony during the week of October 10, 2016.

### IV. CONCLUSION

For the reasons detailed above, the United States respectfully moves this Court for an order permitting the taking of Thomas Uehli's deposition pursuant to Rule 15, of the Federal Rules of Criminal Procedure, during the week of October 10, 2016. Exceptional circumstances exist and the taking of such deposition would, therefore, be in the interest of justice.

DATED: September 7, 2016

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

/s/
ANDREW S. HUANG
Assistant United States Attorney

---

[1] Conversely, the Court could potentially advance the trial date if Uehli's deposition is successfully taken next month.