DAVID Z. CHESNOFF, ESQ.
*Admitted Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. #202182
ROBERT Z. DEMARCO, ESQ.
*Admitted Pro Hac Vice*
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 384-5563
Attorneys for Defendant James Catledge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA                )
                                        )    CASE NO.  3:12-CR-678-MMC
                    Plaintiff,          )
                                        )
v.                                      )
                                        )
JAMES CATLEDGE,                         )
                                        )
                    Defendant.          )
_____)

## DEFENDANT JAMES CATLEDGE'S RESPONSE TO GOVERNMENT'S MOTION TO TAKE DEPOSITION OF THOMAS UEHLI (ECF #171)

**COMES NOW**, Defendant, James Catledge, by and through his undersigned attorneys of record, and hereby files his Response to the Government's Motion to Take Deposition of Thomas Uehli (ECF #171).

///

///

1    This Motion is made and based upon the papers and pleadings on file herein, the attached

2    Memorandum of Points and Authorities, the attached exhibits, declarations, and any oral

3    argument that is heard.

4         Dated this 13th day of September, 2016.

5                                              Respectfully submitted:

6

7                                              ///S///
                                               **DAVID Z. CHESNOFF, ESQ.**
8                                              *Admitted Pro Hac Vice*
                                               **RICHARD A. SCHONFELD, ESQ.**
9                                              California Bar No. #202182
                                               **ROBERT Z. DEMARCO, ESQ.**
10                                             *Admitted Pro Hac Vice*
                                               **CHESNOFF & SCHONFELD**
11                                             520 South Fourth Street
                                               Las Vegas, Nevada 89101
12                                             (702) 384-5563
                                               Attorneys for Defendant James Catledge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      ii

# TABLE OF CONTENTS

A.  INTRODUCTION/STATEMENT OF ISSUES ......................... 1

B.  STATEMENT OF FACTS .......................................... 3

C.  ARGUMENT .................................................... 9

1.  Considering that Mr. Uehli has now agreed to travel to the United States to testify on behalf of James Catledge, and because the government is now prepared to issue a letter of "safe passage"/immunity to Mr. Uehli, the government has not met its burden to force a pretrial deposition in October of 2016. ............ 9

2.  James Catledge's constitutional rights to due process, a fair trial, compulsory process, and the right to present a defense require that Mr. Uehli testify at trial if available. The Government and/or the Court can Order that the government provide a letter of safe passage and/or immunity to Mr. Uehli so that Mr. Uehli can testify at Mr. Catledge's trial. .................................. 13

D.  CONCLUSION .................................................. 18

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT**

*California v. Green,*
399 U.S. 149 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ohio v. Roberts,*
448 U.S. 56 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Washington v. Texas,*
388 U.S. 14 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Webb v. Texas,*
409 U.S. 95 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**NINTH CIRCUIT COURT OF APPEALS**

*Furlow v. United States,*
644 F.2d 764 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Fei Ye,*
436 F.3d 1117 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Hernandez-Escarsega,*
886 F.2d 1560 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Lord,*
711 F. 2d 887 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17

*United States v. Olafson,*
213 F.3d 435 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Omene,*
143 F.3d 1167 (9th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Sanchez-Lima,*
161 F.3d 545 (9th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Straub,*
538 F. 3rd 1147 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*United States v. Vavages,*
151 F.3d 1185 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Westerdahl,*
945 F. 2d 1084 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

iv

1    *United States v. Young,*
2    86 F. 3rd 944 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Williams v. Woodford,*
3    384 F. 3rd 567 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4    **OTHER FEDERAL COURTS**

5    *United States v. Daniels,*
6    194 F.R.D. 700 (Kan. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7    *United States v. Drogoul,*
   1 F.3d 1546 (11th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
8

9    *United States v. Fuentes-Galindo,*
   929 F.2d 1507, 1510 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
10

11    *United States v. Hammond,*
   598 F.2d 1008 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
12

   *United States v. Ismaili,*
13    828 F.2d 153, 159, 161 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

14    *United States v. Leung,*
   351 F. Supp. 2d 992 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
15

16    *United States v. Peter Kiewit Sons' Co.,*
   655 F. Supp. 73 (D. Colo. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17    *United States v. Scroggins,*
   379 F.3d 233 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18    *United States v. Straker,*
   567 F.Supp.2d 174 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
19

20    *United States v. Warren,*
   713 F.Supp.2d 1 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21    *United States v. Williams,*
   548 F.Supp.2d 1145 D. Haw. (February 29, 2008) . . . . . . . . . . . . . . . . . 12, 13
22

23    **STATE COURTS**

24    *State v. Belanger,* 210 P.3d 783 (N.M. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 16

25    **FEDERAL RULES OF CRIMINAL PROCEDURE**

26    Fed. R. Crim. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.    INTRODUCTION/STATEMENT OF ISSUES**

Mr. Catledge has been seeking to depose exculpatory witness Thomas Uehli in Switzerland for over two years. *See, e.g.*, **Exhibit 1**, Transcript August 13, 2014 hearing, pages 34-35. This is because Mr. Uehli previously maintained that he would not travel to the United States to testify at trial. However, he did agree to his deposition taking place in Switzerland. *See* **Exhibit 2**. Mr. Uehli's Affidavit which was previously filed with this Honorable Court as part of Mr. Catledge's Supplemental Motion to Dismiss Indictment, details his anticipated exculpatory testimony. *See id.*; *see also* ECF 126, Exhibit 5N (Affidavit of Thomas Uehli).

For over two years, the government has been in agreement that the deposition would take place in Switzerland (because Mr. Uehli indicated that he would not travel to the United States for trial), and that it was in the process of coordinating said deposition with the Swiss government. Specifically, the government repeatedly indicated that it could only contact Mr. Uehli through official channels in Switzerland.

Now, on extremely short notice, (and after delaying discovery and preparing for the deposition with co-defendant Derek Elliott), the government suddenly seeks to take the deposition of Mr. Uehli, an exculpatory and material defense trial witness, in less than approximately 30 days despite the fact that Mr. Uehli has now indicated that he is "available" and willing to voluntarily travel to the United States for trial and/or a later deposition date.

In addition to the government rushing the deposition, undersigned counsel has also uncovered, after it was elicited from the government, that Mr. Uehli's sudden change of mind to travel to the United States, is related to the fact that the government is now prepared to provide Mr. Uehli with a letter of "safe passage" and that it will pay his travel costs.

1

The government has not fully indicated what a "letter of safe passage" is, other than that it is a "form of immunity." However, it is inherently unfair that the government would withhold such assurances from Mr. Uehli, (while at the same time delaying the deposition), only to now rush the deposition of such an important witness to Mr. Catledge's defense.

As this Honorable Court is aware, Mr. Catledge has constitutional rights to due process, compulsory process, a fair trial, and the right to present a defense. These rights include the fact that Mr. Catledge also has the right to have Mr. Uehli, an exculpatory witness, testify directly in front of the jury, not on a video screen.

Thus, the government cannot meet its burden to establish "extraordinary circumstances" that warrant a deposition. In addition, Mr. Uehli has now indicated that he will not be "unavailable" at the time of trial. As such, the government's request for the deposition should be denied at this time. If Mr. Uehli were to testify at trial, the defense would have until the trial date to prepare. However, the government now seeks to rush his deposition in order to gain a preview of Mr. Uehli's testimony, as well as a tactical advantage which will essentially deprive Mr. Catledge the ability to have Mr. Uehli testify before the jury.

In the event that this Honorable Court is concerned that the deposition of Mr. Uehli should take place in addition to him testifying at trial, Mr. Catledge would request a continuance of the government's proposed deposition date as defense counsel has scheduling conflicts due to the short notice and reliance on the previous stipulation to continue trial. For example, Mr. Chesnoff will be out of the country during the week of October 10, 2016, and Mr. Schonfeld has a trial set during that week. In addition, defense counsel needs additional time to obtain and digest the "substantial" discovery that is slowly trickling in from the government.

In addition, since the filing of the government's motion, Mr. Uehli has indicated to undersigned counsel that he is also available to travel to the United States for a deposition between April 8, 2017 - April 23, 2017 and July 8, 2017 - August 13, 2017. Thus, the government's suggestion that the deposition must take place during the week of October 10, 2016 should be denied.

**B.      STATEMENT OF FACTS**

As stated above, the government has been in agreement to take the deposition of Thomas Uehli in Switzerland for over two years. For example, on August 13, 2014, this Honorable Court conducted a hearing on Mr. Catledge's said Motion to Dismiss wherein the Court ultimately denied said motion. Towards the end of the hearing, the foreign deposition of Mr. Thomas Uehli was discussed on the record. Specifically, AUSA Rees conceded that Mr. Uehli's testimony was relevant to the case, and stated:

> MR REES: Your Honor, one of the recent times that we met on the case, there was the issue of a deposition that the defense would like to do with a Swiss citizen who is in Switzerland. We were going to get the ball rolling with a conference call to which this citizen had agreed. Unfortunately, I got back from Washington that we can't even have a phonecall with a Swiss citizen in Switzerland without going through all the formal MLAT channels. I have submitted that MLAT some months ago. I haven't heard a recent status on it, and I was, frankly, focused on this motion. I didn't think to send an e-mail last week. So I'm not sure what the current status of that is. But that's something that is in the works, something that the defense has indicated they would like to get done. So I would suggest that we come back maybe in the 14-to 30-day range. It will give me sufficient time so at least we can get the status on the Swiss MLAT.
>
> THE COURT: Okay. Is this a victim alleged in ---
>
> MR. CHESNOFF: No.
>
> THE COURT: --- some fashion?
>
> MR. CHESNOFF: This is an individual who worked --
>
> THE COURT: At the company?
>
> MR. CHESNOFF: at the company.
>
> THE COURT: Oh.

MR. CHESNOFF: Intimately knowledgeable of the --

THE COURT: Okay.

MR . CHESNOFF : --- facts, Your Honor.

THE COURT: All right.

MR. REES: He has been deposed in a civil proceeding. I've read it and it --- it's -- it does appear to be plainly relevant, so I don't think I have any basis to object to -- to the deposition. And it -- Like I said, it's in the works, so ..

THE COURT: Okay. So maybe we should say 30 days because of the -- the international aspect of this. And would this be grounds, then, to exclude time from the running of the speedy trial clock for effective preparation?

MR. REES: (Nodding head.) Yes, Your Honor, and I believe the case has been previously deemed to be complex as well, so I think there's a --

*See* **Exhibit 1**, Transcript of August 13, 2014, hearing, pages 34-35.

On October 22, 2015 undersigned counsel sent an email to AUSA Rees requesting an update regarding the deposition of Mr. Uehli. *See* **Exhibit 3**. On October 23, 2015, AUSA Rees responded that he would "send an email to my contact today asking for an update." *See id.* On October 27, 2015, AUSA Rees responded "I have been informed that the Swiss are favorably disposed to the request and that things are moving well over there." *See id.* On the same day, undersigned counsel asked AUSA Rees if there was any timetable from the Swiss government, to which AUSA Rees responded, "I did not get a specific timetable. But the fact that the Swiss government is now engaged is an encouraging one." *See* **Exhibit 4**.

After assurances from the government that the process was moving forward, undersigned counsel would also regularly request discovery in light of the deposition and trial. For example, on November 16, 2015, undersigned counsel sent a letter to AUSA Rees seeking additional discovery. *See* **Exhibit 5**.

On December 28, 2015, after receiving no response, undersigned counsel DeMarco sent a follow up email to AUSA Rees. *See* **Exhibit 6**. Because additional discovery needed to be provided, and because the government did not yet provide an update regarding

4

the foreign deposition of Mr. Uehli, on February 10, 2016, the parties submitted a Stipulation and Order to Continue the trial date. The stipulation detailed that:

"1.    There has been a delay in the parties taking the foreign deposition of Thomas Uehli, which the government has previously agreed on the record is a material witness in this case;

2.    The government has indicated that it will be providing significant additional discovery to the defense." *See* ECF 150.

Said Stipulation was approved by the Court and the trial was subsequently continued to October 24, 2016. *See* ECF 151.

On the same day said Stipulation was submitted (February 10, 2016), undersigned counsel received additional discovery from the government which contained nearly 1500 additional pages of documents as well as numerous emails which appeared to have been cherry picked by Derek Elliott before they were provided by the government. This discovery also included a transcript which indicated that, on or about January 5, 2016, Mr. Uehli was interviewed by Swiss authorities on behalf of US government regarding his potential deposition. Said transcript of this interview can be provided to the Court *in camera*.

On February 17, 2016, after conducting a preliminary review of the new discovery, undersigned counsel again wrote to AUSA Rees seeking additional discovery and information. *See* **Exhibit 7**.

On March 10, 2016, after receiving no response from AUSA Rees regarding the February 17, 2016 discovery letter, undersigned counsel DeMarco sent another follow up email to AUSA Rees. *See* **Exhibit 8**.

On June 3, 2016, while still awaiting an update from the government regarding additional discovery and the status of the deposition, the parties submitted a Stipulation to continue the status hearing which was set for June 22, 2016. *See* ECF 161. This Stipulation was approved by the Court and said hearing was rescheduled to August 10, 2016.

On or about July 26, 2016, undersigned counsel received notification that the government made available two hard drive images of co-Defendant Derek Elliott's computers. These materials have been ordered from Ricoh (the government's third party vendor) and undersigned counsel are awaiting the arrival of said discovery from Ricoh.

On or about August 3, 2016, the government provided additional discovery including a USB allegedly provided by co-defendant Derek Elliott, as well as additional alleged victim questionnaires, photos, and 302's of interviews with Derek Elliott.

From a review of the recent discovery, it appears that the government has been interviewing co-defendant Derek Elliott since at least November of 2015. Moreover, it now appears that the government has been interviewing Derek Elliott regarding Mr. Uehli in anticipation of the deposition.

On August 9, 2016, counsel for Mr. Catledge and the government filed a Stipulation and Order seeking to continue the jury trial and status hearings. *See* ECF 163. The parties again cited the fact that the government was still producing "substantial" discovery, and that the government was still in the process of providing an update regarding Mr. Uehli's deposition.

On August 30, 2016, undersigned counsel sent another request for discovery to the government. *See* **Exhibit 9**.

On August 31, 2016, after a period of no response from the government regarding the deposition, AUSA Rees responded to an email from Counsel Chesnoff about the status of the deposition, and AUSA Rees suddenly indicated that Mr. Uehli's deposition would take place in San Francisco on or about October 4 and 5, 2016.

The parties then had a group conference call on September 2, 2016 to discuss scheduling. Undersigned counsel indicated that October would not work as counsel has scheduling conflicts, relied on the previous stipulations, and needed additional time to prepare in light of the sudden notification.

For example, Counsel Schonfeld has a five day evidentiary hearing the week of September 19th, multiple court appearances the following week, and a trial is set during the week of October 10, 2016. Furthermore Counsel Chesnoff will be out of the country during the week of October 10, 2016. As stated above, undersigned counsel is also awaiting additional discovery from the government.

During the conference call, AUSA Rees indicated that Mr. Uehli allegedly had plans to travel to the United States, and that he was not able to change the deposition date. Furthermore, he indicated that he would file a motion if the parties could not agree to the deposition in October.

Undersigned counsel then indicated that they would like the opportunity to contact Mr. Uehli to see if there were alternative dates to conduct the deposition. It was mutually agreed that counsel would resume the conversation on September 6, 2016.

On September 6, 2016, Counsel Schonfeld and DeMarco and AUSA's Rees and Huang had another conference call wherein the government indicated that it would not continue the October deposition. Counsel Schonfeld and DeMarco indicated that they would be calling Mr. Uehli that day to speak with him. Counsel Schonfeld and DeMarco then called Mr. Uehli who indicated that he would travel to the U.S. for a deposition in October. Mr. Uehli also indicated that he would travel to the United States in the spring or summer of 2017 as an alternative. Mr. Uehli also indicated for the first time that he was recently informed that the United States government may provide him with a letter of "safe passage". Mr. Uehli also indicated that the government also offered to pay his travel expenses to come to the United States. *See* Declaration of Robert DeMarco, **Exhibit 11**.

Shortly after this call, Counsel Chesnoff and Counsel Schonfeld called AUSA Rees and discussed the deposition. During this call, AUSA Rees indicated that Mr. Uehli had recently volunteered to come to the United States. Also, it was elicited by Counsel Chesnoff during this call, that the government was considering providing Mr. Uehli with a letter of

1  "safe passage" which the government indicated is a "form of immunity". But for this

2  information being elicited by Counsel Chesnoff, counsel for Mr. Catledge does not believe

3  said information would have been disclosed by the government.

4        AUSA Rees, however, during the call, stated that he did not yet have official

5  approval for the letter of "safe passage". During the conversation, undersigned counsel again

6  requested all discovery and reports related to the government's efforts to secure the deposition

7  as well as its contacts with Mr. Uehli.

8        After the call, on September 6, 2016, undersigned counsel Schonfeld emailed AUSA

9  Rees the following:

10      It has become clear that at least one representative of the United States
government has been in communication with Mr. Uehli and/or a surrogate
11  of Mr. Uehli. The request for a letter of safe passage had never before
been raised nor had there ever been a suggestion that Mr. Uehli would
12  invoke his rights under the Fifth Amendment at a deposition in
Switzerland.
13

14      Accordingly, we are not in a position to respond any further to your
request for a deposition in the United States without additional
15  information. We are hereby making a formal request that you produce all
communication, whether currently memorialized or not, between the
16  United States government and it's representatives and Mr. Uehli and/or his
surrogate(s) including but not limited to agents of any branch of the
17  government in Switzerland. To be clear, we are requesting all emails,
facsimiles, correspondence, text messages, and other forms of written
18  communication. We are further requesting that any government agent that
was engaged in the above stated communication through verbal means
19  memorialize said communication.

20      We are also placing you on notice that the above requested discovery
should be produced prior to the filing of your Motion, as it directly
21  impacts your request.

22      Mr. Rees, it is incredulous that discussions of immunity were only ferreted
out by us and that no representative of the government had informed us of
23  the same while requesting our consent to a short setting of a domestic
deposition.

24  *See* **Exhibit 10**.

25

26

27

28                                                    8

On the evening of September 7, 2016, without providing the requested discovery, the government unilaterally filed a motion seeking to depose Mr. Uehli during the week of October 10, 2016 in San Francisco, California.

Since the filing of the motion, Mr. Uehli has indicated to undersigned counsel that he is also available to travel to the United States for a deposition between April 8, 2017 - April 23, 2017 and July 8, 2017 - August 13, 2017. *See* Declaration of Robert DeMarco, Exhibit 11.

**C.    ARGUMENT**

**1.    Considering that Mr. Uehli has now agreed to travel to the United States to testify on behalf of James Catledge, and because the government is now prepared to issue a letter of "safe passage"/immunity to Mr. Uehli, the government has not met its burden to force a pretrial deposition in October of 2016.**

Federal Rule of Criminal Procedure 15(a)(1) states, in pertinent part:

"A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice...."

The Advisory Committee's Notes state:

Subdivision (a) is revised to provide that the government as well as the defendant is entitled to take a deposition. The phrase "whenever due to special circumstances of the case it is in the interest of justice," is intended to make clear that the decision by the court as to whether to order the taking of a deposition shall be made in the context of the circumstances of the particular case. The principal objective is the preservation of evidence for use at trial. *It is not to provide a method of pretrial discovery nor primarily for the purpose of obtaining a basis for later cross-examination of an adverse witness.* Discovery is a matter dealt with in rule 16. An obviously important factor is whether a deposition will expedite, rather than delay, the administration of criminal justice. Also important is the presence or absence of factors which determine the use of a deposition at the trial, such as the agreement of the parties to the use of the deposition; the possible unavailability of the witness; or the possibility that coercion may be used upon the witness to induce him to change his testimony or not to testify. See rule 16(a)(1)(v).

Subdivision (a) also makes explicit that only the "testimony of a prospective witness of a party" can be taken. This means the party's own witness and *does not authorize a discovery deposition of an adverse witness.* The language "for use at trial" is intended to give further emphasis to the importance of the criteria for use specified in subdivision (e).

Fed.R.Crim.P. 15(a) advisory committee's note (1974 Amendment) (emphasis added).

When Rule 15(a) was adopted, "'it was contemplated that in criminal cases depositions would be used only in exceptional situations.'" *United States v. Hernandez-Escarsega*, 886 F.2d1560, 1570 (9th Cir. 1989) (citing Fed. R. Crim. P. 15 note). The Ninth Circuit has stated that "[o]rdinarily, exceptional circumstances exist when the prospective deponent is unavailable for trial and the absence of the testimony would result in an injustice." *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir.1998).

"Rule 15(a) allows the . . . court broad discretion in deciding whether to order depositions in a criminal case." *United States v. Olafson*, 213 F.3d 435 (9th Cir. 2000). *See also Furlow v. United States*, 644 F.2d 764, 767 (9th Cir. 1981) ("Whether to grant or deny a motion to depose a proposed witness in a criminal trial is discretionary."); *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir.1998).

Rule 15(e) does require substantive evidence that the witness is unavailable; however that requirement is not a prerequisite to taking the deposition. Rather, it is a prerequisite only to admitting the deposition at trial under the evidence rules. *See Sines*, 761 F.2d at 1439. ("If the party taking the deposition seeks to introduce it as evidence at trial, he will have to demonstrate at that time that the deponent is unavailable.").

"[U]nder Rule 15, a deposition, once it is taken, is not automatically admissible at trial .... it may only be used at trial if the witness is then unavailable ...." *Id.* (citing H. Rep. No. 247, 94th Cong., 15th Sess. (1974). In making this determination, the court must "consider[] the particular circumstances of each case to determine whether the 'exceptional circumstances' requirement has been satisfied." *Id.* (citing *United States v. Farfan-Carreon*, 935 F.2d 678, 679 (9th Cir. 1989); *United States v. Ismaili*, 828 F.2d 153, 159, 161 (3d Cir. 1987) (district court did not abuse its discretion by denying defendant's request for Rule 15 depositions of foreign witnesses who were either available to testify at trial or whose testimony was not material).

10

Ultimately, courts have held that the burden is on the party seeking the foreign deposition to prove such exceptional circumstances. *See United States v. Fuentes-Galindo*, 929 F.2d 1507, 1510 (10th Cir. 1991); *Ismaili*, 828 F.2d at 159.

Unavailability is defined by reference to Federal Rule of Evidence 804(a), which provides, in relevant part, that a witness is unavailable if he or she is "'absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means.'" *United States v. Straker*, 567 F.Supp.2d 174, 180 (D.D.C.2008) (quoting *United States v. Aguilar-Tamayo*, 300 F.3d 562, 565 (5th Cir. 2002)).

A witness who resides abroad and outside the reach of a court's subpoena power is not automatically "unavailable" without a further showing that he or she will not testify in court. *Id.*

Unavailability is also to be determined according to the practical standard of whether under the circumstances the government has made a good-faith effort to produce the person to testify at trial. *See Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1979); *California v. Green*, 399 U.S. 149, 189 n. 22, 90 S.Ct. 1930, 1951, n. 22, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring). Moreover, "[t]he lengths to which the prosecution must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness." *California v. Green*, 399 U.S. at 189 n. 22, 90 S. Ct. at 1951 n. 22.

In addition, "[t]he court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial." *United States v. Drogoul*, 1 F.3d 1546, 1555 (11th Cir.1993). The Ninth Circuit has also held that "fairness and efficiency of the trial process" alone do not warrant Rule 15 depositions. *See United States v. Fei Ye*, 436 F.3d 1117, 1123-24 (9th Cir. 2006).

1    First, it is significant to note that Mr. Uehli is a witness that is anticipated to testify

2    in favor of Mr. Catledge, not the government. Second, in light of Mr. Uehli's recent

3    agreement with the United States that he would in fact travel to the United States to testify,

4    the government has not met its burden to establish "extraordinary circumstances" which

5    justify a deposition in light of the fact that Mr. Uehli will now travel to the United States.

6         Again, the entire reason Mr. Catledge previously sought to take the deposition in

7    Switzerland was because Mr. Uehli previously indicated that he would not travel to the United

8    States.

9         Here, again, because the United States government is now offering Mr. Uehli a letter

10   of safe passage/immunity to travel to the United States and testify, a deposition is not needed

11   as the government has not established that he will be "unavailable" at the time of trial.   It

12   must be noted that the government has not specifically indicated what a "letter of safe

13   passage" is, other than that it is a form of immunity.

14        Thus, the government's mere speculation of "the *possibility* that Swiss authorities

15   *may* cease to further assist the government in obtaining Uehli's testimony" is not enough to

16   mandate the deposition in lieu of Mr. Uehli's trial testimony. *See* ECF 171, page 7, lines 6-7

17   (emphasis added).   *Compare U.S. v. Daniels*, 194 F.R.D. 700 (Kan. 2000) (holding that

18   government did not meet burden to show that a witness was unavailable when witness had a

19   brain infection and "may" lose her ability to speak or "may" suffer seizures or paralysis).

20        Furthermore, a party cannot use a deposition as a mechanism to gain a "preview" of

21   an adverse witness's testimony.   In *United States v. Williams*, 548 F.Supp.2d 1145 D. Haw.

22   (February 29, 2008), a defendant moved for an order permitting defense counsel and an

23   investigator to interview a co-defendant who had pled guilty, and the co-defendant moved to

24   prevent her deposition.

25

26

27

28                                    12

In *Williams*, the court stated:

> Delilah also argues that the deposition would give the Government an unfair advantage by allowing it to preview her trial testimony and use her deposition against her if her trial testimony differs from her deposition testimony.

*Id.* at 1148.

Ultimately, the court denied the co-defendant's request and concluded:

> The Court cannot find that Delilah is unavailable for trial. Naeem is free to subpoena Delilah for either the guilt or penalty phase, and the Government has offered to pose questions written by Naeem's attorneys during one of its pretrial interviews and to provide Naeem with a report of the interview. Further, the Court finds that Delilah's plea agreement and her refusal to submit to a defense interview do not constitute exceptional circumstances for purposes of Rule 15(a)(1). The Court therefore DENIES Naeem's request for a order compelling Delilah to submit to a deposition.

*Id.* at 1150-1151; *see also United States v. Warren*, 713 F.Supp.2d 1, 3 (D.D.C. 2010) ("Rule 15 permits depositions in a criminal case to preserve testimony, not to foster discovery, and only in exceptional situations.").

Here, simply stated, the government has not met its burden to justify the sudden deposition in October 2016, especially in light of the fact that Mr. Uehli has indicated that he is willing to travel here, and that the government is willing to provide a letter of "safe passage." Under these recently changed circumstances, Mr. Catledge would like to present Mr. Uehli in front of the jury at his trial, not on a video screen.

**2.      James Catledge's constitutional rights to due process, a fair trial, compulsory process, and the right to present a defense require that Mr. Uehli testify at trial if available. The Government and/or the Court can Order that the government provide a letter of safe passage and/or immunity to Mr. Uehli so that Mr. Uehli can testify at Mr. Catledge's trial.**

The right to a fair trial has long been a pillar of the American justice system. The Sixth Amendment provides that an accused has the right "to have compulsory process for obtaining witnesses in his favor." The right to call witnesses is broad. As the Supreme Court stated in *Washington v. Texas*, 388 U.S. 14 (1967), "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a

13

1   defense, the right to present the defendant's version of the facts as well as the prosecution's to

2   the jury so it may decide where the truth lies." *Id.* at 19.

3          Substantial government interference with a defense witness's free and unhampered

4   choice to testify amounts to a violation of due process. *United States v. Scroggins*, 379 F.3d

5   233, 239 (5th Cir. 2004); *United States v. Hammond*, 598 F.2d 1008, 1012 (5th Cir. 1979);

6   *United States v. Vavages*, 151 F.3d 1185, 1188 (9th Cir. 1998). Defendants need only prove

7   substantial interference by the preponderance of the evidence. *Scroggins*, 379 F.3d at 239.

8   Such interference is a harmful per se due process violation and does not require a showing of

9   prejudice. *Hammond*, 598 F.2d at 1013.

10         This tenet also encompasses the fact that defendants have a right to present their own

11  witnesses to establish their defense. *Washington v. Texas*, 388 U.S. 14, 18-19 (1967);

12  *Hammond*, 598 F.2d at 1012.

13         Prosecutors who interfere with the freedom to present testimony without fear of

14  retaliation against the witness by the government violate the defendant's Fifth and Sixth

15  Amendment rights. *See Webb v. Texas*, 409 U.S. 95, 97-98 (1972) (defense witness intimidated

16  into not testifying by remarks of trial judge); *Washington v. Texas*, 388 U. S. 14, 19 (1967)

17  (right to present witness to establish defense is fundamental to due process).

18         As one court has stated, witnesses should not have to "walk[] the tightrope of

19  prosecutorial discretion from threat of imprisonment to the hope of freedom." *United States v.*

20  *Peter Kiewit Sons' Co.*, 655 F. Supp. 73, 77 (D. Colo. 1986).

21         These rights are so sacrosanct, that if in the particular circumstances of a case, the

22  prosecution's deliberate misconduct deprives a defendant of needed witnesses, the court may

23  dismiss the indictments whether on constitutional grounds or on the court's own supervisory

24  powers. *United States v. Leung*, 351 F. Supp. 2d 992, 996-97 (C.D. Cal. 2005); *Hammond*, 598

25  F.2d at 1014 (dismissing indictment without requiring a showing of prejudice because

26

27

28                                                    14

government intimidation of a witness was the type of due process violation that is harmful per se).

To alleviate some of these concerns surrounding Mr. Uehli's testimony and ability to appear at trial, this Honorable Court can also order immunity for Mr. Uehli, so that he may testify at Mr. Catledge's trial in front of the jury.

The government's power to grant a witness use immunity is conferred by 18 U.S.C. sections 6002 and 6003. Use immunity means that, while the government may prosecute the witness for an offense related to the subject matter of the witness's testimony, the testimony itself and any fruits of that testimony may not be used against the witness in any criminal case except for a prosecution for perjury arising out of the testimony. *United States v. Lord*, 711 F. 2d 887, 890 (9th Cir. 1983).

In the Ninth Circuit, a defendant is entitled have a court order the government to provide immunity for a witness if the defendant can show that: (1) the testimony of a witness, otherwise unavailable but for a grant of witness immunity, is relevant; and (2) that the judicial fact finding process would be distorted by the government's denial of immunity. *United States v. Young*, 86 F. 3rd 944, 947 (9th Cir. 1996).

"To satisfy the first prong . . . a defendant need not show that the testimony sought was either 'clearly exculpatory' or 'essential to the defense'; the testimony need be only relevant." *United States v. Westerdahl*, 945 F. 2d 1084, 1086 (9th Cir. 1991). The defendant need not show that the testimony sought was either clearly exculpatory or essential to the defense. *Id.*

The second prong can be established in two different ways. The second prong may be established if the prosecution intentionally caused a defense witness to invoke the Fifth Amendment right against self incrimination and thus refused to testify for the defense. This must amount "to something akin to prosecutorial misconduct." *United States v. Straub*, 538 F. 3rd 1147, 1157-1158 (9th Cir. 2008): The prosecution's conduct must amount to a substantial

15

1 interference with the defense witness's free and unhampered determination to testify. . ."
2 Clearly, this standard focuses on the conduct of the government and its intent.

3       Alternatively, the second prong may be satisfied if the defendant shows "that the
4 prosecution granted immunity to a government witness in order to obtain that witness's
5 testimony, but denied immunity to a defense witness whose testimony would have directly
6 contradicted that of the government witness." *Id.* at 1158, quoting *Williams v. Woodford*. 384
7 F. 3rd 567, 600 (9th Cir. 2004). Or, put another way, "a showing that the selective denial of
8 immunity had the effect of distorting the fact-finding process is sufficient.*" Straub*, 538 F. 3rd
9 at 1158, 1162, 1166 (reversing the district court's second denial of the defendant's request to
10 compel use immunity and urging judgment of acquittal unless the prosecution granted use
11 immunity to the defense witness); *see also State v. Belanger*, 210 P.3d 783, 792-93 (N.M.
12 2009) (creating a rule allowing district courts to grant use immunity with or without the
13 prosecutor's agreement and amending the rules of criminal procedure to reflect this change).

14       In *Westerdahl*, the Ninth Circuit Court of Appeals clarified:

15     ***[M]isconduct is not confined solely to situations in which the***
16 ***government affirmatively induces a witness not to testify in favor of a***
    ***defendant...***

17     Here, the government's case relied heavily on circumstantial evidence
    provided by the testimony of two witnesses who had been granted use
18     immunity by the government, and one witness who testified as part of a
    plea bargain in which a host of felony charges pending against him were
19     dropped. The use of this testimony, while effectively denying Westerdahl
    the right to contradict it with Goldsberry's testimony, may have distorted
20     the fact-finding process, and an evidentiary hearing should have been held
    to determine whether the denial of use immunity for Goldsberry denied
21     Westerdahl his due process rights.

22     Previously, we noted in dicta that where two eyewitnesses tell conflicting
    stories, and only the witness testifying for the government is granted
23     immunity, the defendant would be denied "any semblance of a fair trial."
    Brutzman, 731 F.2d at 1452. The same situation is effectively presented
24     here. Tuck's testimony directly conflicts with the testimony Goldsberry
    would have provided. For the government to grant immunity to a witness
25     in order to obtain his testimony, while denying immunity to a defense
    witness whose testimony would directly contradict that of the government
26     witness, is the type of fact-finding distortion we intended to prevent in
    *Lord.*

27

28                          16

> Therefore, because Westerdahl met the two prongs of the *Lord* test, an evidentiary hearing should have been held to determine whether the government intentionally distorted the fact-finding process. As the district court failed to hold such a hearing, we reverse the judgment of conviction and remand to the district court.

*Westerdahl*, 945 F. 2d at 1087 (emphasis added).

Here, the *Lord* test has been met. First, the previously submitted affidavit of Thomas Uehli shows that his potential testimony is not only relevant, but it is also clearly exculpatory. Mr. Uehli is a former employee of the Elliott's and is prepared to contradict co-defendant Elliott who will seek to help the government prove the existence of an alleged conspiracy at the time of trial.

Second, the government is now rushing the deposition despite the fact that it has feigned an "update" for years. In addition, the government has withheld discovery and has been apparently preparing with Derek Elliot for the deposition  By dangling the letter of safe passage/immunity and travel costs over Mr. Uehli's head, and by now forcing the deposition under these circumstances, the government is effectively attempting to prevent Mr. Uehli from testifying at Mr. Catledge's trial.

Again, it is significant to note that the deposition in Switzerland was previously sought as Mr. Uehli had indicated that he would not travel to the United States to testify at trial. Because the United States is now prepared to offer Mr. Uehli a letter of "safe passage," to travel to the United States for his deposition, the Honorable Court and/or the government should simply provide said letter and immunity to Mr. Uehli so that he can travel to the United States to testify at trial. Thus, there is no need for a deposition at this juncture as Mr. Uehli has indicated that he is no longer "unavailable."

As stated above, Mr. Catledge has a constitutional right to compulsory process, a fair trial, and a right to present a defense. Mr. Uehli's testimony will establish that Mr. Catledge never entered into a criminal conspiracy to commit mail fraud with Derek Elliott. This testimony should be presented directly in front of the jury, not by way of a deposition.

17

1        If this Honorable Court is not inclined to vacate the deposition entirely, at a

2 minimum, the deposition should be continued as counsel has adjusted their schedules based on

3 the recent Stipulation and Order as well as the fact that the government has never previously

4 indicated that Mr. Uehli would travel to the United States. In addition, there is substantial

5 outstanding discovery that still needs to be disclosed by the government.

6        In light of these unique circumstances, the government cannot be rewarded by forcing

7 the deposition to take place during the week of October 10, 2016.

8 **D.     CONCLUSION**

9        In conclusion, Mr. Catledge requests that this Honorable Court deny the

10 government's request for the October 2016 deposition of Mr. Uehli in the United States.

11 Furthermore, Mr. Catledge requests that the Court Order the government to provide Mr. Uehli

12 with a letter of safe passage and/or immunity so that Mr. Uehli can travel to the United States

13 at the time of trial.  In the alternative, Mr. Catledge requests that Mr. Uehli's deposition be

14 continued to the Spring or Summer of 2017 as Mr. Uehli has indicated to undersigned counsel

15 that he is available to come to the United States between either April 8, 2017 - April 23, 2017

16 or July 8, 2017 - August 13, 2017.

17        Dated this 13th day of September, 2016.

18                                 Respectfully submitted:

19                                 /S/

20                                 **DAVID Z. CHESNOFF, ESQ.**
*Admitted Pro Hac Vice*
**RICHARD A. SCHONFELD, ESQ.**

21                                 California Bar No. #202182
**ROBERT Z. DEMARCO, ESQ.**

22                                 *Admitted Pro Hac Vice*
**CHESNOFF & SCHONFELD**

23                                 520 South Fourth Street
Las Vegas, Nevada 89101

24                                 (702) 384-5563
Attorneys for Defendant James Catledge

25

26

27

28                         18

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that service of the foregoing was served on the 14th day of September, 2016, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

<u>/s/ Camie Linnell</u>
Camie Linnell
an employee with Chesnoff & Schonfeld